UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-cv-00128-LLK

KIMBERLY R. McCOY                                                                                    PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and the Commissioner are at Doc. 22 and Doc. 28. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 16].

Plaintiff makes four arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's decision**

On January 5, 2018, Plaintiff filed an application for supplemental security income (SSI) benefits. [Administrative Record (AR), Doc. 15 at 36].

On September 5, 2019, the ALJ issued the Commissioner's final decision, denying Plaintiff's disability claim at the fourth and, alternatively, at the fifth and final step of the sequential evaluation process.

The ALJ's decision followed the 5-step evaluation process, which applies in all Social Security disability cases:

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 5, 2018, when she applied for benefits. *Id.* at 38. Second, the ALJ found that Plaintiff has the following

1

severe, or vocationally significant, impairments: obesity, degenerative disc disease, carpal tunnel syndrome, and residual effects of bilateral hip core decompression. *Id.* Third, the ALJ found that Plaintiff does not have an impairment satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 40.

As required in any case that advances beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC). The ALJ found that Plaintiff has:

> … the residual functional capacity [RFC] to perform light work as defined in 20 CFR 416.967(b) except she can occasionally crouch, crawl, and climb ladders. She should avoid concentrated exposure to vibration and hazards such as unprotected heights or moving and dangerous machinery.

*Id.* at 41.

Fourth, the ALJ found that Plaintiff is not disabled because she is capable of performing past relevant work as a restaurant manager, which was light work as generally performed in the national economy. *Id.* at 45. Fifth, the ALJ found, in the alternative, that Plaintiff is not disabled because she retains the ability to perform a significant number of light and sedentary jobs in the national economy. *Id.*

### The ALJ did not provide a sufficient explanation for the Court to determine whether the ALJ's alternative Step 5 denial is supported by substantial evidence.

In this case, as in *Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851 (6th Cir. 2018), the ALJs found that the plaintiffs can perform past relevant work, which was light (a Step 4 denial), and, alternatively, that the plaintiffs can perform a significant number of sedentary jobs in the national economy (a Step 5 denial). In such a situation, the plaintiff is not disabled if "substantial evidence supports either one of these [alternative] findings." *Id.* at 863.

In this case, substantial evidence does not support the ALJ's alternative fifth step finding that Plaintiff can perform sedentary work. This is because the ALJ recognized (at Step 2) that Plaintiff suffers from severe, or vocationally significant, carpal tunnel syndrome. But the ALJ did not include any

2

manipulative limitation in the ALJ's RFC finding. The vocational expert (VE) testified that Plaintiff would be unable to perform sedentary jobs if she can "only occasionally use the hands for fine manipulative tasks such as handling and fingering."[1] [Doc. 15 at PageID.149

Admittedly, there may be substantial evidence in the administrative record supporting a finding that, notwithstanding her carpal tunnel syndrome, Plaintiff can more than occasionally use of her hands to manipulate objects. But the ALJ did not say what that evidence is. Therefore, the ALJ did not provide a sufficient explanation for the Court to determine whether the ALJ's alternative Step 5 denial is supported by substantial evidence.[2]

---

[1] The VE's testimony is consistent with Social Security Rulings, which provide that sedentary (but not light) work generally requires fine manipulative abilities. According to Social Security Ruling (SSR) 96-9p:

> *Manipulative limitations:* Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any **significant** manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

SSR 96-9p, 1996 WL 374185, at *8. In contrast:

> … Many unskilled light jobs … require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *6.

[2] "An ALJ's finding is not adequately supported if the reasons given by the [ALJ] do not build an accurate and logical bridge between the evidence and the result." *Wood v. Comm'r*, No. 4:20-CV-00057-HBB, 2021 WL 1565793, at *5 (W.D. Ky. Apr. 21, 2021) (internal quotation omitted). This Court is unable to determine whether any alleged errors were harmful or harmless, as the analysis provided does not "permit meaningful review." *Id.* quoting *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004).

The remaining question is whether the ALJ's fourth step finding, which presupposes an RFC for light work, is supported by substantial evidence. For the reasons below, the ALJ's RFC finding for light work is supported by substantial evidence. Hence, the ALJ's fourth step finding is also supported.

**The ALJ's RFC finding for light work is supported by substantial evidence.**

First, Plaintiff argues that "the ALJ's RFC [for light work] is not based on substantial evidence." [Doc. 22 at PageID.802].

Plaintiff argues that the ALJ's finding that her carpal tunnel syndrome is severe, or vocationally significant [AR, Doc. 15 at 38], is incompatible with the ALJ's finding that she can perform light work. The argument is unpersuasive because Plaintiff does not allege or show that this impairment precludes "use of arms and hands to grasp and to hold and turn objects," as generally required to perform light work. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6.

Plaintiff argues that the ALJ's finding that her residual effects of bilateral hip core decompression is severe [AR, Doc. 15 at 38] is incompatible with the ALJ's finding that she can perform light work. The argument is unpersuasive because Plaintiff does not allege or show that this impairment precludes the exertional requirements of light work, i.e., "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," with sitting occurring "intermittently during the remaining time." SSR 83-10 at *6. Absent a supporting medical opinion, the "mere diagnosis of [an impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013).

Plaintiff argues that "[a]s in [*Lutz v. Comm'r*, No. 2:14-CV-725, 2015 WL 5343660 (S.D. Ohio Sept. 15, 2015)], the ALJ erred in finding that she has the severe impairments of carpal tunnel syndrome and residual effects of bilateral hip core decompression resulting from avascular necrosis but did not include any specific restriction associated with those impairments when determining Plaintiff's RFC." [Doc. 22 at PageID.805]. This Opinion has already concluded that, in light of Plaintiff's carpal tunnel syndrome,

4

substantial evidence does not support the ALJ's alternative Step 5 finding that Plaintiff can perform sedentary jobs.

However, nothing in *Lutz* indicates that the ALJ erred in recognizing that Plaintiff suffers from severe bilateral hip core decompression but not including an associated limitation in the ALJ's RFC finding. *Lutz* is distinguishable from the present case for three reasons. First, the ALJ in *Lutz* found that Lutz had moderate difficulties in social functioning for Listing purposes but then omitted that limitation in fashioning Lutz's RFC, which *Lutz* held was an improper attempt by the ALJ to "have it both ways." *Lutz* at *9. Nothing analogous to this occurred in the present case. Second, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r*, 217 F. APp'x 425, 429 (6th Cir. 2007); *see also Simpson v. Comm'r*, No. 1:13-cv-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) (explaining that "an individual can have a severe impairment, i.e., one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work. Put another way, the existence of a severe impairment says nothing as to its limiting effects."). Third, this case, unlike *Lutz*, involved a second application for benefits, which necessitated application of *Drummond v. Comm'r*, 125 F.3d 837 (6th Cir. 1997).[3] The ALJ applied *Drummond* and concluded that the new and material evidence did not show of significant deterioration of Plaintiff's hip condition warranting departure from the prior RFC. [AR, Doc. 15 at 42-43].

Therefore, the ALJ's RFC finding for light work is supported by substantial evidence.

### At worst, the ALJ's not labeling as "severe" Plaintiff's shoulder and foot impairments was harmless error.

---

[3] In *Drummond*, the Sixth Circuit held that an ALJ -- guided by principles of res judicata -- is bound by the RFC determined in a prior claim absent new and material evidence indicating a change in the claimant's condition. In *Earley v. Comm'r*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit returned to *Drummond* to address the question of whether res judicata principles apply only when they favor the claimant or also when they favor the government. *Earley* held that res judicata applies "to individuals **and** the government." *Id.* at 930. However, res judicata does not "prevent the [Commissioner] from giving a fresh look to a new application containing new evidence … while being mindful of … the record in prior proceedings." *Id.* at 931. Still, the claimant "should not have a high expectation about success if the second filing mimics the first one." *Id.* at 933.

Second, Plaintiff argues that the ALJ erred in failing to find that she suffers from "severe physical impairments" affecting her shoulders and feet. [Doc. 22 at PageID.805].

Plaintiff carries the burden of proving that her impairments are severe, or vocationally significant, and that the severity "lasted or [could have been] expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A). *Walters v. Comm'r*, 127 F.3d 525, 529 (6th Cir. 1997). An ALJ's not labeling an impairment as "severe" (at Step 2) does not "constitute reversible error" if the ALJ's decision as a whole indicates the ALJ considered the limiting effects of all severe and non-severe impairments (at subsequent steps). *Emard v. Comm'r*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The ALJ reasonably found that Plaintiff's right shoulder impairment (torn rotator cuff and labrum) did not result in limitation in excess of the ALJ's RFC finding because: 1) In September 2014, it was surgically corrected; 2) In February 2015, Plaintiff reported that it had "completely resolved"; and 3) There was no subsequent ongoing treatment. [AR, Doc. 15 at 38 quoting 416].

The ALJ found that Plaintiff's left shoulder impairment did not result in limitation in excess of the ALJ's RFC finding because: 1) In March 2019, Plaintiff visited the ER complaining of left shoulder pain, but the attending physician noted that she had 5/5 strength and range of motion; and 2) There was no subsequent ongoing treatment. *Id.* at 38.

The ALJ's decision does not mention Plaintiff's right foot impairment (Achilles tendonitis, Haglund's deformity, and equinus contracture) or left foot impairment (capsulitis). But Plaintiff does not point to any medical opinion attributing a specific limitation to these impairments – much less one that satisfies the 12-month duration requirement. Absent a supporting medical opinion, the "mere diagnosis of [an impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013).

Therefore, at worst, the ALJ's not labeling as "severe" Plaintiff's shoulder and foot impairments was harmless error.

**The ALJ's finding of non-severe mental impairment was in accord with applicable legal standards.**

Third, Plaintiff argues that the ALJ erred in not finding that she suffers from "severe mental impairment." [Doc. 22 at PageID.807].

In May 2018, Plaintiff was examined at the request of the Commissioner by Sarah Kerrick, Psy.D, LP [Doctor of psychology, licensed psychologist]. [AR, Doc. 15 at 344]. In light of Dr. Kerrick's findings and the record as a whole, the Commissioner's non-examining psychological consultants, Mary K. Thompson, Ph.D., and Gary Perry, Ed.D. [Doctor of education], opined that Plaintiff suffers from medically determinable depression, but the depression results in no more than mild limitation in the four areas of mental functioning known as the Listing "paragraph B" criteria:  1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself.  *Id.* at 111, 129-30.

The ALJ adopted the opinions of the Commissioner's non-examining psychological consultants and concluded that Plaintiff's medically determinable depression is not severe.  *Id.* at 44.  This conclusion was in accord with applicable legal standards.  *See* 20 C.F.R. § 416.913a(b)(1) (The Commissioner's "medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe.").

**Plaintiff is not entitled to a "Sentence 6" remand.**

Fourth, Plaintiff argues that "new and material evidence supports a different conclusion."  [Doc. 22 at PageID. 811].

The ALJ's decision is dated September 5, 2019.  [AR, Doc. 15 at 47].  Plaintiff argues that the results of a September 11, 2019 lumbar MRI constitutes "material" evidence as contemplated by 42 U.S.C. §

7

405(g), Sentence 6 because the MRI shows that her low back impairment worsened compared to the December 2, 2015 lumbar MRI, which was discussed by the ALJ.

The ALJ noted that the December 2, 2015 lumbar MRI showed "no disc herniations with neural foramina appearing patent diffusely." *Id.* at 43.  In its entirety, the December 2, 2015 lumbar MRI revealed:

> IMPRESSION:  Mild focal kyphosis at L1-2 and evidence of an old mild inferior endplate compression deformity at L1.  Compared with the previous study in 2013, there is no significant interval change of this process which includes slight retrolisthesis of L1.  The distal spinal cord appears unremarkable.  There is no marrow edema or evidence of acute fracture.  **No disc herniations are seen, and the neural foramina appear patent diffusely.** *(emphasis added)*

*Id.* at 567-68.  In its entirety, the September 11, 2019 lumbar MRI revealed:

> IMPRESSION:
> 1.  Grade 1 retrolisthesis of L1 on L2.
> 2.  Straightening of the normal kyphotic curvature of the lower thoracic spine.
> 3.  Multilevel minimal to mild atrophic spondylosis is seen within the posterior facets.
> 4.  There is a remote wedge deformity of the L1 vertebral body with mild loss of vertebral body height anteriority.
> 5.  Multilevel degenerative disc disease with sequelae of same as described.
> 6.  Multilevel ligamentum flavum hypertrophy, which, along with the previously noted degenerative disc disease and hypertrophic spondylosis within the posterior facets, results in multilevel spinal stenosis as described.
> 7.  The examination is otherwise within normal limits for age no acute fracture identified.

*Id.* at 25-26.

Evidence is material only if Plaintiff proves that there is a "reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Miller v. Comm'r*, 811 F.3d 825, 839 (6th Cir. 2016).  From a lay (nonmedical) perspective, these MRIs reveal more similarity than difference.  In any event, as lay persons, neither the ALJ, the Plaintiff, nor this Court is in a position to "interpret raw medical data in functional terms." *Rudd v. Comm'r*, 531 F. App'x

719, 726 (6th Cir. 2013) (quoting *Nguyen v. Sec'y of Health & Human Services*, 172 F.3d 31, 35 (1st Cir. 1999)).[4]

Because Plaintiff does not prove materiality of the new evidence, she is not entitled to a "Sentence 6" remand.

**Order**

Because Plaintiff's four arguments are unpersuasive and the ALJ's decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

November 10, 2021

Lanny King, Magistrate Judge
United States District Court

---

[4] The other evidence relied on by Plaintiff is substantially the same as evidence that was before the ALJ. New evidence that is "cumulative of probative evidence already before the ALJ" is not material. *Allen v. Comm'r*, 561 F.3d 636, 650 (6th Cir. 2009).